RABIN, J. P., VALENTE, STEVENS, EAGER and STEUER, JJ., concur.

Respondent disbarred.

St. REGIS PAPER COMPANY, Appellant, *v.* JOHN L. RAYWARD, Doing Business as RAYWARD ASSOCIATES, et al., Respondents.

First Department, March 27, 1962.

*Horace R. Lamb* of counsel (*H. Richard Wachtel* and *Joseph Diamond* with him on the brief; *Le Boeuf, Lamb & Leiby,* attorneys), for appellant.

*A. Hayne de Yampert* of counsel (*Raymond S. Blessing, Charles C. Humpstone* and *Lauriston Castleman, Jr.,* with him on the brief; *White & Case,* attorneys), for respondents.

STEVENS, J. This is an appeal by plaintiff from an order entered April 6, 1961, which denied its motion for summary judgment.

The primary issue is whether a " memorandum agreement " of May 21, 1959, when read and construed with letters of April 6, 1959 and May 18, 1959, constitutes a valid and binding contract between the parties. A subsidiary question concerns the nature and purpose of a $20,000 payment made April 13, 1959, during the course of negotiations.

In this case the parties engaged in extended negotiations over a considerable period of time for a long-term lease by plaintiff of certain property in Stamford, Connecticut, upon which

defendant Rayward held an option. Buildings were to be erected upon the property which would serve as a research plant for plaintiff. At the outset of negotiations the structures were to be erected by defendant. Later it was provided that plaintiff should construct the necessary buildings.

Eventually, and on May 21, 1959, a document was executed between plaintiff and defendant Rayward termed a memorandum agreement. Paragraph 6 of the document provided: "A more formal contract and a formal lease containing the above will be mutually agreed upon and entered into as soon as reasonably possible but in the meantime the parties are bound as above stated." It is upon this document that defendants place their chief reliance in seeking to establish an enforcible agreement.

Before extended consideration of the writing of May 21, 1959, let us examine the letters of April 6, 1959 and May 18, 1959.

The letter of April 6, 1959, sent by defendant Rayward to plaintiff at plaintiff's suggestion, contains an offer by defendant "to construct a building in accordance with plans and specifications approved by you which we would lease to you." The offer was to be delivered not later than May 18, 1959, with a prompt acceptance or rejection by plaintiff after its directors meeting of May 20, 1959. The letter refers to a zoning application and acknowledges a deposit of $20,000 which, if plaintiff accepted the offer, would be applied on account of the first year's rent of plaintiff. (In point of fact the check for $20,000 was not mailed to defendant until April 13, 1959.) The letter included what was termed an "outline of the offer" defendant was prepared to make. This outline referred to a "building site" on the upper portion of approximately 15 acres out of a 35-acre area, of approximately 80,000 square feet of research and development space, with lease rent to be determined on a net basis related to construction. No figure was mentioned as to the estimated cost of construction. This was accepted by plaintiff. An examination of the letter reveals that it is nothing more than an offer to make an offer.

The letter of May 18, 1959 from defendant to plaintiff is brief and its contents follow:

"Pursuant to our letter to you of April 6, 1959 and mutually agreed upon modifications whereby you instead of us will construct the building, we herewith deliver the plans and specifications developed.

"In accordance with our agreement we look forward to your definite decision one way or the other shortly after your meeting of May 20th."

This letter merely indicates that plaintiff rather than defendants is to construct the building.

On May 19, 1959, another draft of a proposed agreement to lease, a sketch of the land and what was termed "plans and specifications" (referred to in the May 18 letter) were forwarded to plaintiff. This draft, like an earlier one, was never executed, nor were the plans approved by plaintiff.

Examination of the document of May 21, 1959 discloses that it is lacking in many material particulars. For example, no time is set for the beginning of the lease; when rent is to be paid; the cost of construction; when the loan of $400,000 referred to in paragraph 4 is to be made to Rayward; what security, if any, is required; the terms and conditions of repayment of such loan; and, while the document provides that St. Regis "will construct a building to plans mutually agreeable" to St. Regis and Rayward, ownership of the improvements so constructed is left open, and there is nothing to indicate that any plans were "mutually agreeable." In other particulars the document is vague and imprecise. The letters of April 6, 1959, and May 18, 1959, even when read in conjunction with the May 21 writing do not supply the elements essential to a valid contract.

In the present case there is such absence of essential terms in the May 21 document as to indicate that the finality of assent was lacking, and there was no final and complete meeting of the minds.

Voluminous and bulky draft leases were discussed, but the parties were unable to agree, and the documents were not executed. In fact the proposed drafts of agreement, both before and after May 21, went far beyond the writing of May 21. Moreover, no variance in zoning regulations had been granted and the matter was still pending before the Stamford Planning Board when, on June 16, 1959, counsel retained by defendant Rayward informed the board that St. Regis and the defendant Executive Park, a corporation formed June 12, 1959 by Rayward of which he was president and principal stockholder, were still negotiating and that Executive Park intended to develop the area. The statement in the letter of June 22, 1959, from plaintiff to defendant Rayward that further consideration by plaintiff of defendant's proposal to lease was impossible because plaintiff could not buy the land, is a stated reason for terminating negotiations. But the letter also reflects an absence of mutual agreement on lease terms even up to that date.

Looking to the nature of the proposed construction, we find that it involved a considerable outlay of moneys—perhaps several millions of dollars—and the proposed lease with an

initial term of 25 years plus an option to renew for a like period could cover a span of one-half century. In the absence of clear and substantial evidence it will not be presumed that the parties intended at that time to be bound by so vague and incomplete a document as the May 21, 1959 memorandum, even when read with the earlier documents referred to. " [W]ith material elements left for future negotiation " plaintiff was " not bound and could withdraw from the negotiations without incurring any liability " for breach of contract. (*Brause* v. *Goldman,* 10 A D 2d 328, 336, affd. 9 N Y 2d 620.) Moreover, the very indefiniteness of the May 21 writing rendered it impossible of enforcement. (*Slavit Furniture Co.* v. *Eisenberg,* 284 App. Div. 1052.)

A somewhat different question arises as to the $20,000. In the letter of February 10, 1959, written by defendant Rayward to plaintiff, reference is made to the advancing by plaintiff of $20,000 " to be applied on account of expenses incurred " by defendants " in connection with the contemplated venture, and a like amount is to be credited by us against your first year's rental under our proposal."

The letter of April 6, 1959, does not disaffirm or destroy completely the expense use of the $20,000; it merely reiterates an intention to credit that amount towards plaintiff's rent for the first year, if plaintiff accepts defendant's offer. The fact that the letter of May 18, 1959 reveals that responsibility for construction would shift to plaintiff, does not dispose of the question raised. There is thus a triable issue as to the intent of the parties and the purpose for which the $20,000 was given. It cannot be said as a matter of law that the $20,000 was a deposit for rent, and not a payment for or on account of expenses incurred by defendant in connection with the project. This is particularly true in light of the prior relationship between the parties and the writings involved.

The order appealed from should be modified on the law and the facts to the extent of dismissing the counterclaim, and otherwise affirmed, with costs to the appellant.

BOTEIN, P. J., BREITEL, RABIN and McNALLY, JJ., concur.

Order entered on April 6, 1961 unanimously modified, on the law and on the facts, to the extent of dismissing the counterclaim, and, as so modified, affirmed, with $20 costs and disbursements to the appellant.